# Gilkeson *against* Snyder.

If one purchase land of which the title fails, yet if a third person advance money to the vendor in part payment, on the representation of the purchaser that he would be safe in so doing, and the purchaser gives a bond to such third person for the amount, he cannot, in a suit on the bond, bar a recovery on the ground of defect of title.

Where one owns both land and the money due upon it, there is no lien on it for the money.

Representations by counsel in the presence of his client, on the faith of which one has advanced money, are the representations of the client.

ERROR to the Common Pleas of *Montgomery* county, in which this issue was tried to determine whether the plaintiff, Joseph Gilkeson, was entitled to be paid two judgments in his favour of 30th May 1837, against Snyder & Hutton, out of moneys raised on a sheriff's sale of real estate of Snyder & Hutton, viz: a messuage and lot of 11¾ acres, in Montgomery county. The right to pay was contested by William Acuff, a subsequent judgment creditor.

The consideration for these two judgments, one for $240, the other for $333.33, appeared to be as follows. Samuel Gilkeson, the brother of the plaintiff, was the owner of real estate devised to him by his father in 1813, subject to certain charges. Andrew Gilkeson, another brother, obtained a judgment on *scire facias* against Samuel Gilkeson, on the 13th November 1832, for $4000. This judgment was given to secure Andrew for debts due him, and for becoming bail, but was for more than was due to him on every account. Samuel became insolvent, and William Jaggers was appointed his assignee. Jaggers agreed to sell the estate to Snyder & Hutton for $3500; and a meeting took place at the office of Mr Fallon, in Philadelphia, to settle the incumbrances existing on it: and it was agreed that certain of the incumbrances should remain, and for the others Snyder & Hutton should give their bonds to the creditors. The following paper, made out at the time, purported to show the incumbrances, and what was then due to Andrew:—

| | | |
|---|---|---|
| To Jane Fitzwater, - - - - - | $300.00 | ⎫ |
| To Harriet Meredith, - - - - - | 300.00 | ⎬ to remain. |
| To Elias Gilkeson, - - - - - | 166.67 | ⎭ |
| | ———— | |
| Amounting to - - - | $766.67 | |

[Gilkeson v. Snyder.]

To be paid to Joseph Gilkeson,
which is secured to him by Judgt.

| | | |
|---|---|---|
| Bond given by Snyder & Hutton, | $333.33 | to do, if it can be secured so that the executors cannot be, at some future time, charged therewith. |
| | $1100.00 | |
| Legacy to Jane Fitzwater, . | 400.00 | |

$1500.00

Bonds given by Snyder & Hutton,

|  |  |  |  |
|---|---|---|---|
| " One to Joseph Gilkeson, for | | | $240.00 |
| " One to Andrew Gilkeson, for | | | 480.00 |
| " One to " " for | | | 1136.00 |
| " One to " " for | | | 104.00 |

$3460.00

Interest due Jane Fitzwater on legacy for $400, from August 1st, 1835, to April 1, 1837, 1 yr. 8 mo. and remains unpaid    -  -  -  -     40.00

$3500.00

Of the above, $1500 consisted of legacies under the will, and there was a dower to the mother, $333.33 of which, it was admitted, belonged to Samuel after her death. Mr Fallon, who, it was alleged, acted as counsel for the defendants alone, said, at this meeting, if the property were sold at sheriff's sale, the purchaser would get this sum; if at private sale, Samuel Gilkeson might have it. The will was silent as to the devise over, and he said it would go to Samuel on her death, with the consent of the heirs. They were willing Samuel should have it. Mr Fallon said Joseph Gilkeson would be safe in buying this claim, and taking the bond of Snyder & Hutton for it, which they were willing to give. Joseph thereupon gave Samuel $200 in cash, and gave a bond or note for $133.33. A receipt was given, at the same time, by Samuel to Joseph for this sum. Then Snyder & Hutton gave their bond to Joseph Gilkeson for the $333.33.

The $240 bond was given by Snyder & Hutton to the plaintiff for ten years' interest on the $400 bond to Mrs Fitzwater, which he had paid, and for which, he stated, he had delivered them her receipt. On receipt of the bonds, Andrew Gilkeson engaged to enter satisfaction on the $4000 judgment.

Jaggers made a deed to Snyder & Hutton, but it conveyed no title, because it was a private, and not a public sale. Andrew Gilkeson thereupon revived his judgment for $4000, took out execution against Samuel Gilkeson, and sold the estate by the sheriff for $1300.

[Gilkeson v. Snyder.]

The court charged the jury as follows:—

Joseph Gilkeson, the plaintiff, claims from the defendants, of the funds in the sheriff's hands of the proceeds of the sale of the real estate of the defendants conveyed to them by the executors of Casper Schlater, in the issue trying, the amount of two judgment bonds, which have been read to you, respectively bearing date the 8th of March 1837. These judgments were entered in this court to May Term 1837, and so remained until the year 1839, when the judgments were opened so far as to let the defendants into a trial on the merits. The defendants have pleaded payment with leave to give the special matters in evidence. It will be your duty to give separate verdicts—that is, a verdict in each case.

Under the plea of payment with leave to give the special matters in evidence, in Pennsylvania, in a case like the present, the defendant may give in evidence fraud, mistake, want of consideration, or anything which will show that in equity and good conscience the plaintiff ought not to recover. In other words, when money ought not to be paid under the plea of payment, the defendant has a right to show it, and in law it will be considered as paid, when it ought not to be paid. This brings us to consider the case and the evidence. You will recollect its history. Andrew Gilkeson, the elder, made his last will and testament in June 1813, which was proved and approved in the register's office of Montgomery county in November the year following. By his will he devised his mansion-house, with some land, to his son Samuel, and charged that property with certain legacies. The material devises which come under consideration in this case, are the devise to his daughter, Jane Fitzwater, and the devise to his widow of certain interest during life. Samuel went into possession, and in 1832 became indebted to his brother Andrew, who was bail for him, &c. To secure Andrew, Samuel gave him a judgment, which has been given in evidence, for $4000. This judgment was for more than was due by the defendant in the judgment, including all the money for which Andrew had gone bail. Samuel was driven to insolvency, and one Jaggers was appointed his assignee. He sold the estate to Snyder & Hutton for $3500. At this time there were incumbrances open on the records of Montgomery county, of a much larger sum than $3500. To ascertain the actual amount of these incumbrances was certainly one object of the meeting of the parties at the office of Mr Fallon in March 1837. There is a paper made at that time which shows the incumbrances and what was then due to Andrew.

It would seem that the whole purchase money was subject to the incumbrances, and that no money was to be paid to Jaggers for the use of the general creditors. Snyder and Hutton paid no money to any one except $25, which went to the counsel of Jaggers. We have said—and its truth is submitted to you—that one great object of the meeting at Fallon's was to fix and ascertain the

[Gilkeson v. Snyder.]

liens; and we return to that and call your attention to the evidence of what took place at that meeting.

The amount for which Snyder and Hutton gave their bonds was—

| | | |
|---|---|---|
| To Joseph Gilkeson, the bond for | - - | $333.33 |
| Do. | bond for - - - | 240.00 |
| | | $573.33 |
| To Andrew Gilkeson, 1 bond - | - | $480 |
| 1 do. | - | 1136 |
| 1 do. - | - | 104 |
| | | 1670 |
| | | $2243.33 |

On the receipt of these bonds Andrew Gilkeson engaged to enter satisfaction on the $4000 judgment. You have heard from Mr Fallon how the judgment was revived, and the reason for it; that it was discovered that Snyder and Hutton had no title; that the sale by Jaggers was a private sale, and that by the Act of Assembly it should have been a public one, and that Snyder and Hutton got no title to which these judgments would attach. The $4000 judgment was revived on the 23d of May 1837. Before this time it was discovered they got no title. If Fallon is believed, Joseph Gilkeson knew this as well as Andrew. Counsel was consulted, and Andrew Gilkeson proceeded to sell the land. A *fieri facias* issued to May Term 1838, and a *venditioni* to August Term following. There were two pieces of land. On the 1st October 1838 the sheriff made a deed for part to David Acuff, and for another part to Andrew Gilkeson. It is conceded that Snyder and Hutton got no title by the sale by Jaggers—that the property was taken from them on the judgment of Andrew Gilkeson. Now, has not the consideration failed? What is the law? In *Steinhauer* v. *Witman*, and in many cases, the law is well settled that a distinction has been established between purchasers who have paid and who have not paid the purchase money. Those who have paid have no relief. But those who have not paid are relieved in the case of eviction or manifest failure of title. Is not the evidence clear that here was an absolute failure of title? Is it not equally clear that the bonds given by Snyder and Hutton were given for the land, and that it was given for prior liens on this land, which had a right to be paid, so far as they were due, out of the sheriff's sale? Is it not clear that Joseph Gilkeson had full notice of this? It is even admitted that the $333.33 judgment is still a lien on this land. Then why should the plaintiff recover in that case against men who have received no consideration?

Then as to the $240 judgment that was given for money advanced by Joseph Gilkeson to his sister, Mrs Fitzwater. He had advanced that money on the faith of the lien. Had he notice that

[Gilkeson v. Snyder.]

the title had failed, before the sheriff's sale? This is proved by Fallon, of whose credit you are the judges. If he had notice, then he ought to have come in and claimed the money out of the sheriff's sale. When the land was sold on the $4000 judgment, the money arising from the sale was a fund to discharge all prior liens then due and unpaid. That was the legal and legitimate fund for payment, and if he omitted to claim the money, he ought not to come on a person whose bond he holds without consideration. If the consideration has failed for which the bonds were given, and the plaintiff not put in a worse situation by the giving of these bonds, why should there be a recovery? It is always a good defence to a bond when the consideration clearly failed, unless the party giving the bond has misled the holder and induced him to advance his money.

Upon the whole, if you find the consideration failed (which is proved by Andrew Gilkeson himself) for which the bonds were given, the defendants are entitled to your verdict, unless you find Joseph Gilkeson, the plaintiff, is put in a worse situation by the giving of the bonds.

The plaintiff excepted to the charge. A verdict was rendered for the defendants.

Immediately after the conclusion of the charge, and while the jury were still in the box, the plaintiff, before excepting to the charge, requested the court to charge the jury—"That if they believe Joseph Gilkeson paid Samuel Gilkeson $200 in cash, with the knowledge of Snyder and Hutton, and upon the representation of their counsel, made in their presence, that he would be safe in buying Samuel Gilkeson's interest in the principal sum, yielding the widow her annual interest, then the defect of Snyder and Hutton's title will constitute no legal bar to a recovery on the judgment of $333.33." The court refused to give this instruction, on the ground that they would not establish such a practice against the rules of the court; and the plaintiff excepted.

Errors assigned:

1. The court erred in overruling the objection to the testimony of Mr. Fallon, who had been the counsel of the plaintiff, and under whose advice the plaintiff acted in the matter about which he testified.

2. In charging the jury that the *whole* purchase money which Snyder and Hutton were to pay for the premises purchased of William Jaggers, was subjected to incumbrances on the property.

3. In instructing the jury that Joseph Gilkeson had advanced the $240 on the faith of the lien.

4. In charging that the $240 for which the bond read in evidence was given was a lien on the land, and was to be paid out of the proceeds of the sheriff's sale; when by the testimony in the cause the plaintiff had paid this sum for Samuel Gilkeson, and at his request, to Jane Fitzwater, on account of interest due from

[Gilkeson v. Snyder.]

him to her under her father's will; and upon such payment, such interest ceased to be a lien on the premises and became a personal debt due to the plaintiff from Samuel Gilkeson.

5. In charging that if Joseph Gilkeson had notice of the failure of Snyder and Hutton's title, he ought to have come in and claimed the money out of the proceeds of the sheriff's sale; that that was the legitimate fund for the payment of his bond for $240, and if he omitted to claim the money he ought not to recover.

6. In charging that notice to Joseph Gilkeson of the failure of Snyder and Hutton's title affected the plaintiff's recovery on the bond for $240, the plaintiff not having been a party to the sale or to the release read in evidence.

7. In charging that the plaintiff held the bonds without consideration.

8. In instructing the jury that if Snyder and Hutton's title failed, the consideration of the bonds failed, and the defendants were entitled to their verdict, although the said bonds were given and taken as stated in the next error.

9. In instructing the jury that the failure of Snyder and Hutton's title was a good defence to the bonds given by them to the plaintiff:

Because the plaintiff was no party to the sale nor to the release read in evidence, and because the bond for $240 was taken by the plaintiff at the request of the defendants, in lieu of that sum which they were to pay, to discharge the debt of that amount due from Samuel Gilkeson for interest paid to Jane Fitzwater for him and at his request; and the other bond for $333.33 was taken for that sum which the defendants were to pay to Samuel Gilkeson at the decease of Edith Gilkeson, and which the plaintiff purchased and paid for with the assent of the defendants, and upon the representation of their counsel, in their presence, that the plaintiff would be safe in buying it and taking Snyder and Hutton's bonds for the same.

10. In not instructing the jury as requested in the last bill of exceptions.

11. The court ought to have instructed the jury, that as the defendants, at the time of executing the bonds and warrants of attorney given in evidence, consented that the plaintiff should enter the judgments when he pleased, and the bonds and warrants had been taken as mentioned in the ninth error, the matters given in evidence constituted no defence against the plaintiff's claim.

12. The court ought to have instructed the jury, that from the testimony of Mr Fallon and Andrew Gilkeson, Mr Fallon was an incompetent witness, and his testimony was not to be taken into consideration in making up their verdict.

13. The defendants having made no defence, and William Acuff having no right to make any defence against the plaintiff's reco-

very, the verdict and judgment should have been in favour of the plaintiff for the amount of his bond in each case.

14. A separate verdict was not rendered on each bond.   The verdict is a joint one, and no execution can issue thereon.

*Sterigere* and *Ross*, for the plaintiff in error.
*G. R. Fox* and *J. Fox*, contra.

The opinion of the Court was delivered by
ROGERS, J.—Two actions were brought on two several bonds, one for $240, the other for $333.33.   The causes were tried by the same jury, and under a charge embracing both cases.

The general facts, which appertain to both cases, are well stated by the court, and as to the $240 bond, the cause is placed on correct principles.   It is the common case of a bond given in part payment of a tract of land, the title to which has proved defective.   Inasmuch, therefore, as the consideration has failed, on the principles settled in *Steinhauer* v. *Witman* the defendants have a complete defence.   But conceding the defect of title, another question arises depending on other and distinct considerations arising out of the testimony of Andrew and Samuel Gilkeson.   If they are worthy of credit, the case was this.   The defendants purchased of Samuel Gilkeson a tract of land, the title to which was defective.   It was encumbered with a judgment in favour of Andrew Gilkeson for $4000, also with legacies under the will of Andrew Gilkeson, the father, for about $1500, and a dower to the mother, $333 of which, as is admitted by the parties, belonged to Samuel after her death.   For the purpose of adjusting their respective claims the parties met at Mr Fallon's office, who, it is alleged, acted as the counsel of the defendants alone.   The $333.33, as Andrew says, was part of the dower fund payable at the death of his mother; $300 of the principal was to go to Jane Fitzwater; $300 to Harriet Meredith; $166.67 to Elias Gilkeson.   There was then a balance of $333.33.   Mr Fallon said, if sold at sheriff's sale, the purchaser would get it; if sold at private sale, Samuel Gilkeson might have it.   The will is silent as to a devise over; and he said it would go to Samuel, on her death, with the consent of the heirs.   They were willing Samuel should have it.   Mr Fallon said Joseph Gilkeson would be safe in buying this and taking Snyder and Hutton's bond for it; which they were willing to give.   Joseph bought it and gave Samuel $200 in cash, and gave a bond or note for the other $133.33.   A receipt at the same time was given for the $200.

If this be a true account of the case, of which the jury must judge on the representation of Mr Fallon, who was the attorney of the defendants, and in their presence the plaintiff has been induced to advance his money, his act is their act, and they must

[Gilkeson v. Snyder.]

be answerable for the consequences. The court say if the jury find the consideration failed, the defendants are entitled to verdict, unless Joseph Gilkeson is put in a worse situation by giving the bonds. ' And this is correct, as far as it goes; but we think the court should have instructed the jury further, that if they believed Joseph Gilkeson paid Samuel Gilkeson $200 in cash with the knowledge of Snyder and Hutton, and upon the representation of their counsel, made in their presence, that he would be safe in buying Samuel Gilkeson's interest, the defect of Snyder and Hutton's title will constitute no legal bar to a recovery to the amount paid with interest. . If a person about to take an assignment of a bond calls on the obligor and informs him of his intention, who acknowledges it is unpaid, and that he has no defence and that he will pay it, he cannot afterwards be permitted to gainsay his own act. He is the cause of the loss, and cannot be allowed to deny his obligation to pay. For the like reason the defendants are estopped to deny their liability. It may be proper to remark that we cannot perceive that there was any lien on the land for this sum. Samuel was the owner of the land and the money both. The ownership of the land is an extinguishment of the lien, unless under very special circumstances.

It is enough to observe that we see no valid objection to the admission of Mr Fallon as a witness.

Judgment reversed, and a *venire de novo* awarded.