## Ayres *versus* Wattson *et al.*

1. A mortgage on land was given by one to secure the payment of notes given by another at their maturity. When the notes fell due they were taken up and others given to the mortgagees. *Held,* that the mortgage was not security for the renewal notes.

2. The principal had given a mortgage on a vessel to the mortgagees of the land. The mortgagor in the first mortgage seized the vessel under an execution against the principal. In a contest between the mortgagee of the vessel and the first mortgagor as to the title to the vessel, the latter called his principal as a witness; in his examination he stated that the land was mortgaged to secure a note which was a final renewal of the original notes. *Held,* that the mortgagor of the land was not estopped from alleging that his mortgage was satisfied.

3. An estoppel in equity arises from some act or declaration of one party causing or at least attempting an injury to another.

4. A creditor may hold an unlimited number of collaterals, and avail himself of any as long as the debt is unpaid.

5. A party who calls a witness is not estopped by a statement by the witness which is immaterial to the issue and which cannot affect the result.

March 3d 1868. Before STRONG, READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia:* In Equity.

The bill was filed by William Ayres against Thomas B. Wattson and Edward L. Clark, trading as Thomas Wattson & Sons. It sets out that about June 2d 1859 George R. Ayres made two promissory notes payable in four months, one for $1600 and the other for $1200, and delivered them to the defendants, who, on the 21st of the same month, were holders of them; on that day the plaintiff executed a mortgage to the defendants reciting that they were holders of those notes, and that to secure their pay-

ment he conveyed a ground-rent (described in the bill) to the defendants, with the condition that if George R. Ayres should pay to the holders of the notes "the respective amounts thereof on the days they respectively mature and become due," the mortgage, &c., should determine, &c.: plaintiff averred that the notes were paid by George R. Ayres and delivered to him, and that the consideration and proviso of the mortgage had been satisfied, that the defendants had been applied to to deliver him the mortgage and satisfy it on the record, but they had refused. The prayer was that the mortgage may be declared to have been satisfied; that defendants may be compelled to deliver it up and satisfy it on the record; and for general relief.

The defendants answered that they were willing to satisfy the mortgage when the amount secured by it should be paid; they further alleged that when the notes mentioned in the mortgage fell due, George R. Ayres asked a renewal of them, to which the defendants acceded, delivered up the old notes and took renewal notes, which from time to time have been renewed until the defendants became the holders of one note dated January 10th 1861 for $2800; that during this time no part of the original debt had been paid, nor was there any change except by the substitution of notes for those which had matured; that the mortgage was left with the defendants and considered by them as collateral security for the extension of the original loan. They further averred that on the 30th of November 1858 George R. Ayres, who was otherwise indebted to them, had given them a mortgage on the bark Florida to secure all the debts he might owe them, including promissory notes given by him or their notes advanced to him; that in 1861 they took possession of the bark, and were about selling her under a power in the mortgage, when the plaintiff, under a judgment confessed to him by George R. Ayres, took the vessel under an execution, and contested the right of the defendants, who had instituted proceedings in the nature of a replevin, for the vessel; that on the trial the plaintiff called George R. Ayres, and proved by him that the defendants held a mortgage on the ground-rent for the note of $2800, and that it is not competent for the plaintiff to assert that the mortgage was discharged by the surrender of the notes, and they averred that the debt due on the notes, to secure which the mortgage was given, is still unpaid.

William L. Dennis, Esq., was appointed examiner. George R. Ayres testified before him that the notes were paid by him on the 3d of October 1859; that he drew the money from bank by a check and paid the notes, and that he then took up the notes. He also testified that when he took up these notes he got other notes from defendants, varying in amounts individually, but amounting to the same in the aggregate. When these notes matured he got

[Ayres *v.* Wattson.]

others; a note of $2800 still remained unpaid, which was "the last note of this string." The proceeds of the Wattson notes went into the same general bank account. He further stated that in a litigation in New York, in relation to the bark Florida, mentioned in the answer, he testified there was a note for $2800, for which the defendants held a mortgage on a ground-rent as collateral security, and that he considered the claim under that mortgage waived by their assuming to put it on the bark.

The record of the proceeding in New York in relation to the bark was given in evidence. It showed an action by Wattson & Sons against Anthony F. Campbell, sheriff of King's county, New York, for seizing the bark, which they averred was their property. The sheriff answered that he seized it as the property of George R. Ayres, under an execution against him on a judgment in favor of William Ayres for $17,161.

On the trial the Wattsons proved that their mortgage on the bark had been given to secure various sums of money advanced by them, amongst the rest the note of January 10th 1861 for $2800, as security, for which they claimed in their answer to hold the ground-rent mortgage.

George R. Ayres was examined on the part of the sheriff, and testified that one of the accounts between him and the Wattsons included a note "for which they held a mortgage on ground-rent as collateral for $2800." In the New York case the jury found for Wattson & Sons, the plaintiffs in it, and assessed the value of the property at $14,000.

There was no other mortgage given by the plaintiff or George R. Ayres to the defendants except that on the plaintiff's ground-rent.

The Court of Common Pleas (Allison, P. J.) decided that George R. Ayres's testimony in the New York case estopped the plaintiff from claiming the relief sought by his bill; and decreed that if the $2800, with interest and costs, should not be paid in three months, the ground-rent be sold and the proceeds applied to the payment of the debt, &c.

The plaintiff appealed, and assigned the decree for error.

*F. Sheppard*, for appellant.—The plaintiff was but surety, and was discharged by the renewals: 2 Pars. on Cont. 18; Castleman *v.* Holmes, 4 J. J. Marsh. 1; 2 Sm. L. Cas. 466–7 (42 Law Lib.). The doctrine of equitable estoppel is inapplicable: Cole *v.* Bolard, 10 Harris 435; 2 Sm. L. Cas. 462, 468 (42 Law Lib.); Pierce *v.* Andrews, 6 Cush. 4; Wooley *v.* Chamber, 24 Verm. 270; Casey *v.* Inloes, 1 Gill. 439; Bitting's Appeal, 5 Harris 211; Carpenter *v.* Hillock, 12 Barb. 128; Taylor *v.* Zepp, 14 Miss. 482; Alexander *v.* Walter, 8 Gill. 239; Morton *v.* Hodgton, 22 Me. 137; Otis *v.* Sill, 5 Barb. 102; Ryers *v.* Farwell, 9 Id. 615; Cartwright

[Ayres v. Wattson.]

v. Gardner, 5 Cush. 273; Powel v. Hine, 21 Cowen 519; The Cambridge Institution v. Littlefield, 6 Id. 216; Watkins v. Peck, 13 N. H. 360; Pounds v. Richards, 21 Ala. 244; Carter v. Darby, 15 Id. 696; Hemley v. Hemley, Id. 91; Freeman v. Cook, 2 Exch. 653.

*R. McMurtrie*, for appellee, cited Martin v. Ives, 17 S. & R. 364; Goodman v. Losey, 3 W. & S. 528; Calhoun v. Dunning, 4 Dall. 120; Chambers v. Lapsley, 7 Barr 24; Carman v. Noble, 9 Id. 368; Hocker v. Jamieson, 2 W. & S. 441.

The opinion of the court was delivered, March 9th 1868, by
SHARSWOOD, J.—The mortgage by the appellant to the defendant, Thomas B. Wattson, was "for the better securing the payment" of two promissory notes, drawn by George R. Ayres to his own order, to the holders thereof who were the firm of Thomas Wattson & Sons, of which the mortgagee was a member. The condition of the mortgage was, that if the said George R. Ayres should pay the said notes "on the days they respectively mature and become due or payable," the mortgage and the estate thereby granted should cease and determine. The answer admits that when the notes fell due, George R. Ayres requested a renewal thereof, which was acceded to, and the old notes delivered up and renewal-notes taken, and these again from time to time renewed, until the defendants became the holders of one note for $2800, dated January 10th 1861, payable in four months, being the aggregate of the sums for which the two original notes were given. It is plain that the mortgage, in law as well as in equity, was not a security for the renewal-notes. But it is alleged that the appellant is equitably estopped from setting up the claim that the mortgage is satisfied. It appears that George R. Ayres had given also to the defendants a mortgage on the bark Florida, of which they took possession, and that the appellant, who had obtained a judgment against George R. Ayres, levied on the said bark. Thereupon the defendants instituted an action of replevin against the sheriff of King's county, New York; and on the trial of that action, the appellant being present in court, and we may assume, for the purposes of this case, the real party defending the action in the name of the sheriff, called George R. Ayres as a witness, who stated in the course of his examination that Thomas Wattson & Sons held a mortgage on a ground-rent as collateral for the note of $2800. This is relied on as an estoppel sufficient to preclude the appellant from now asserting that the mortgage was satisfied when the original notes, to secure which it was given, were delivered up and new notes taken in their places. But it is difficult to see how such a ground can be maintained. An estoppel in equity arises from some act or declaration of one party by which an injury to

[Ayres *v.* Wattson.]

the other party has been caused or at least attempted: Gilkeson *v.* Snyder, 8 W. & S. 200; Cook *v.* Grant, 16 S. & R. 198; Commonwealth *v.* Moltz, 10 Barr 527; Bitting & Waterman's Appeal, 5 Harris 211. If the fact that the defendants held another existing security for the debt of $2800 had been a defence to the action of replevin, and had been set up as such by the appellant, whether a recovery was secured by that means or not, there would be some show of reason and authority for it. It is very plain, however, that it did not affect in the least the validity of the defendant's mortgage on the bark Florida, how many, or what other independent collateral securities for the debt secured by that mortgage they may have held at the same time. A creditor may hold an unlimited number of collaterals, and can avail himself of any of them as long as the debt remains unpaid. In point of fact, no such question was raised or submitted to the jury, as appears by the record of the replevin suit in the Supreme Court, second judicial district for King's county, New York, which is in evidence; and moreover the defendants recovered a verdict in that proceeding, and the bark was valued by the jury at $14,000, which was about the amount of the debt secured by the mortgage, including the note of $2800 now in question. To hold that a party who calls a witness on the trial of a cause is estopped in equity by the statement of a fact by that witness, which is entirely immaterial to the issue joined, and which cannot and does not affect the result, would carry the doctrine of equitable estoppel to an unheard of and dangerous extreme. Even the honest mistake of the witness ought not to prejudice the party who invokes his testimony on another and material point. It would be most unjust in that case to give it effect, and we can easily perceive how dangerous such a doctrine would be in the hands of a corrupt or designing witness. Estoppels close the mouth of the party to allege or plead the truth; and among Lord Coke's rules on the subject the fourth is, that a matter alleged that is neither traversable nor material, shall not estop: Co. Litt. 352, b. If this be so when the estoppel arises from pleading of record, much more is it when it is only from what transpires orally in the excitement and hurry of a jury trial. The maxim *Allegans contraria non est audiendus* is a valuable one, but it is not to be pressed beyond its legitimate limits. Like the ancient estoppel it shuts out the truth, is odious and must be strictly made out: Broom's Legal Maxims 268. A party to a cause who offers a witness for the purpose of proving a particular fact, and by means of that evidence, either standing alone or linked with other testimony, attempts to defeat a claim or defence of his adversary, may possibly be held in any subsequent proceeding against the same party to be concluded by that allegation. But evidently such is not this case. We think,

[Ayres *v.* Wattson.]

therefore, that the appellant was entitled to the relief which was prayed in his bill.

The decree of the court below is reversed. And now it is decreed by this court that the defendant, Thomas B. Wattson, do deliver up to the complainant, William Ayres, the indenture of mortgage mentioned in his bill, and that on payment of the costs thereof, he satisfy the same of record; and that he deliver up at the same time the ground-rent deed in the said indenture of mortgage mentioned; each party to pay his own costs.