Jennings, Friedman and Stevens et al., now for the use of the Mercantile Trust Company, Assignee of William E. Schmertz, Appellant, *v.* William Loeffler.

*Measure of damages—Stock.*

The measure of damages for a breach of contract to return borrowed stock is the price of the stock at the time of the refusal to return it upon demand.

*Debtor and creditor—Collateral security.*

A creditor who holds stock as collateral security for his debt, and also holds judgments which are liens upon the real estate of the debtor, is not obliged to claim the payment of his debt out of the fund raised by a sheriff's sale of the real estate, but may rely upon the collateral security for its payment.

Where a creditor has a prior lien upon two funds, both of which are subject to junior liens, he is not obliged to resort to one rather than the other to satisfy his debt.

Argued Nov. 8, 1897. Appeal, No. 180, Oct. T., 1897, by plaintiff, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1893, No. 415, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Bill in equity for an account.

COLLIER, P. J., found the facts to be as follows :

On August 1, 1891, William Loeffler, the defendant, entered of record in the prothonotary's office of this county, at No. 84, October term, 1891, D. S. B., a judgment note against William E. Schmertz, for the sum of $100,000. On August 7, 1891, execution was issued on this judgment, and a large amount of the personal property of Schmertz was levied upon and sold, the amount realized therefrom being something over $65,000. At the time Schmertz gave the judgment to Loeffler, he, Schmertz, was insolvent, and on August 7, 1891, the day upon which the execution was issued on Loeffler's judgment, other judgments were entered up against Schmertz, and subsequently executions issued upon them. Schmertz's life was insured for a large amount, and at the time of the delivery of the

judgment note to Loeffler, Schmertz assigned to Loeffler, as
security for his indebtedness, two policies for the sum of
$25,000 each, in the Mutual Life Insurance Company of New
York. Schmertz lived until July 13, 1893, and from the date
of the assignment of these policies until Schmertz's death,
Loeffler kept them alive and paid in premiums therefor out of
his own funds the sum of $7,347.80.

Schmertz's indebtedness to Loeffler on August 1, 1891,
amounting to $179,900, was composed of the following items:

(1) Loeffler had indorsed for Schmertz and discounted for
him to the total amount of $53,650; (2) Loeffler had loaned to
Schmertz 250 shares of the capital stock of Standard Plate
Glass Company, which at the time of the loan was worth $100
to $105 per share, or $25,000; (3) Schmertz had been appointed
guardian of the minor children of R. E. Schmertz, and Loeffler
was surety upon several bonds for said Schmertz as guardian,
amounting altogether to the sum of $101,250. After the fail-
ure of Schmertz, the Safe Deposit and Trust Company was
appointed guardian of these minor children, and the liability of
the sureties upon Schmertz's bonds was liquidated and fixed at
$22,000, of which Loeffler's proportion was $10,243.09, which
sum was paid by Loeffler to the Safe Deposit and Trust Com-
pany, the guardian. So the total indebtedness of Schmertz was
as follows:

| | |
|---|---:|
| Indorsements . . . . . . | $53,650 00 |
| 250 Shares Plate Glass Stock . . . | 25,000 00 |
| Liability paid on Schmertz's bonds as guardian . . . . . . . | 10,243 09 |
| Premiums paid on Insurance Policies held as collateral . . . . . . | 7,374 80 |
| Interest on various accounts . . . | 3,609 50 |
| | $99,877 39 |

When Schmertz died in July, 1893, the original bill in this
case was filed, and before the proceeds of the two policies of
insurance upon Schmertz's life were paid to Loeffler, two agree-
ments were executed, which provide that the proceeds of the
two policies, amounting to $81,189.52 should be paid to Loef-
fler, and that Loeffler should retain in his hands the sum of
$7,347.80, which sum he had expended in keeping the policies

alive, and the further sum of $25,000 which he claimed was due him on account of 250 shares of the stock of the Standard Plate Glass Company, which said Schmertz borrowed from said Loeffler, and lost the same by sale thereof under said pledge, which claim of said Loeffler as to its validity or amount is disputed by the assignee of W. E. Schmertz. And it is the sum of $25,000 now in the hands of the defendant Loeffler, that is the matter of dispute.

Loeffler, after retaining the amounts agreed upon, paid over the balance, $32,374.80 to the assignee.

Prior to the failure of Schmertz, Loeffler loaned him 250 shares of the Standard Plate Glass Company, worth from $100 to $105 per share, and afterwards—also prior to his (Schmertz's) failure—Loeffler demanded a return of his stock, which was refused; nor was Loeffler ever tendered the stock.

After Loeffler's judgment was entered and execution issued upon it, and levy made on personal property, Schmertz's real estate was levied upon by the judgment creditors immediately behind Loeffler, and, at the distribution before the auditor, Loeffler made no claim on the lien of his judgment, and did not share in the distribution.

Loeffler's judgment was $100,000, and the indebtedness on said note was as follows:

| | |
|---|---:|
| Indorsements | $53,650 00 |
| 250 shares Standard Plate Glass stock | 25,000 00 |
| Paid Guardian on Schmertz bond | 10,243 09 |
| Premiums paid on policies held as collateral | 7,374 80 |
| Interest on these various amounts | 3,609 50 |
| Net indebtedness | $99,877 39 |

On account of this indebtedness Loeffler has received the following sums:

| | |
|---|---:|
| December 19, 1891, on his execution on personal property, in court No. 2 | $53,650 00 |
| February 18, 1893, on his execution in same case, by decree of court, "That the said balance remaining in registry of the court, realized upon the execution aforesaid, be | |
| Amount carried forward, | $53,650 00 |

|  |  |
|---|---:|
| Amount brought forward, | $53,650 00 |
| forthwith paid over to plaintiff, on account of the judgment held by him and upon which said execution was issued," and which we find the plaintiff had the right to apply to his judgment . . . . | 12,276 49 |
| Proceeds of policies now in his hands, on account of loan of 250 shares of Standard Plate Glass Company, which we find he is entitled to . . . . . . | 25,000 00 |
| Return of premiums paid to keep the policies alive . . . . . . . | 7,374 80 |
| Total amount received . . . | $98,301 29 |

Balance still due on Loeffler's judgment: $1,576.10.

### CONCLUSIONS OF LAW.

It is contended by the learned counsel for plaintiff that Loeffler was bound to present his claim to the auditor for distribution out of the funds realized on the sale of the real estate of Schmertz, he having the first lien, and having neglected to do this he cannot now retain the $25,000 in his hands.

We do not agree with him in this. We think Loeffler had a right to rely on the collateral that he held, and was not bound to present his claim before the auditor. The recovery of judgment upon the principal debt does not affect the pledgee's right to hold and enforce the pledge taken to secure that debt. It is the very nature of collateral security that it may be resorted to for a satisfaction of the principal debt, if its payment shall not otherwise be obtained : Jones on Pledges, sec. 591.

Again it is contended that the offer of Mr. McCook, for the assignee of Mr. Schmertz, to return the stock, at a time that it had depreciated to less than one half its value, which was refused by Mr. Loeffler, was equivalent to a tender. Mr. Loeffler had, before the failure of Mr. Schmertz, demanded a return of his stock, and had been refused, and we think he was not bound to accept an offer to get the stock, and to accept it at its depreciation. It was in no sense a legal tender.

Having found that the defendant is entitled to retain the $25,000 in dispute, and that after giving all credits of money

received on his judgment it is not yet paid in full, the bill is dismissed at costs of the plaintiff.

*Error assigned* was decree dismissing bill.

*Albert York Smith,* with him *Joseph A. Langfitt,* for appellant.—Loeffler stood idly by and, while he held the first lien on the real estate, allowed Mrs. Schmertz, the wife of Wm. E. Schmertz, and E. M. Quiby, the son-in-law, to proceed upon the real estate and come in for a large part of their claims, although they were subsequent to his judgment, and he, Leoffler, made no attempt to participate in this fund. There was amply sufficient in the real estate to have paid Loeffler in full.

*M. W. Acheson, Jr.,* with him *George C. Wilson* and *Wm. D. Evans,* for appellee.—Interest is allowed in trover on the value of the chattels at the time when converted, from that time, or from demand, when a demand is necessary: 1 Sedgwick on Damages, sec. 316; Perley on Interest, 135; Neiler v. Kelley, 69 Pa. 403; Huntingdon, etc., R. R. Co. v. English, 86 Pa. 247: McKenney v. Haines, 63 Maine, 74; Brass v. Worth, 40 Barbour (N. Y.), 648; R. R. v. Callahan, 56 Ga. 331.

The stock having been converted by reason of a demand and refusal, Mr. Loeffler was not bound subsequently to accept it at its depreciation: Musgrave v. Beckendorff, 53 Pa. 310; Bank of Montgomery v. Reese, 26 Pa. 143.

A mere offer to pay money is not a legal tender: Sheredine v. Gaul, 2 Dall. 190.

Loeffler was not bound to proceed against Schmertz's real estate: Ayres v. Wattson, 57 Pa. 360; Jones on Pledges, sec. 591; Addams v. Heffernan, 9 Watts, 529; Ramsey's App., 2 Watts, 228.

By the very nature of collateral security appellee had a right, as against general creditors, to avail himself thereof so as best to subserve his own interests: Ayres v. Wattson, 57 Pa. 360.

The recovery of judgment upon the principal debt does not affect the pledgee's right to hold and enforce a pledge taken to secure that debt: Jones on Pledges, sec. 591; Dyott's Estate, 2 W. & S. 463.

One who has a lien upon two funds and suffers one of them to be disposed of by a judicial sale and the proceeds applied to junior incumbrances, is not thereby precluded from having the amount of his claim out of the second fund when converted into money by a judicial sale : Addams v. Heffernan, 9 Watts, 529.

Not only had Loeffler a right to resort for payment to his collateral, but he was bound to do so. The lien claimants immediately junior to him could have compelled him to do just what he did: Sheldon's Work on Subrogation, sec. 61; Ramsey's Appeal, 2 Watts, 228.

OPINION BY MR. CHIEF JUSTICE STERRETT, Jan. 3, 1898:

The general subject of contention presented by the amended bill, etc., in this case, is whether the defendant, William Loeffler, is entitled to retain twenty-five thousand ($25,000) dollars on account of the two hundred and fifty shares of Standard Plate Glass Company stock loaned by him to William E. Schmertz and not returned. The court below held that he was, and accordingly dismissed the bill at plaintiff's costs.

The decree might well be affirmed on the learned trial judge's concise and accurate findings of the controlling facts, in connection with the conclusions briefly but correctly drawn by him therefrom ; but, it may not be amiss to notice some of the questions involved.

The sum above stated is in defendant Loeffler's hands, retained by him out of the proceeds of life insurance policies assigned to him by W. E. Schmertz (since deceased), as collateral security against sundry liabilities for and on account of said assignor, including the Plate Glass stock in controversy. The residue of the insurance money was paid over by Loeffler to the use plaintiff, for the benefit of the creditors. It follows therefore that if Loeffler is entitled to the $25,000, the bill was rightly dismissed.

In its printed argument, the use plaintiff states that " the testimony on the part of the plaintiff is that a tender of the stock in question (same amount and kind) was made by . . . . the original assignee of Schmertz, . . . . and that Loeffler refused to accept it." The testimony of Mr. McCook, one of the assignees referred to, further shows that the stock, at the time

he offered to return it, had depreciated in value so that it was not worth more than fifty cents on the dollar. It is true, the same witness also testified that defendant Loeffler, "had not to my knowledge and according to my information ever demanded a return of that stock from Mr. Schmertz until after the failure, and that the stock immediately on his failure fell to as low a point as it was then." But Loeffler testified that he had made a demand for the return of the stock before Schmertz's failure, and that it was refused. The court specially finds this fact. While this finding of fact is embraced in the second assignment, the conclusions of law alone are specified as errors. But even if treated as covered by this assignment, the finding of the court could not be reversed, because in that respect Loeffler's testimony was not contradicted by that of McCook.

Unless there is something else in the case, the decree under the authorities was right. In Huntingdon, etc., Railroad v. English, 86 Pa. 253, it was said: "The rights of the parties were definitively fixed when the breach occurred." In Musgrave v. Beckendorff, 53 Pa. 310, it was held that the measure of damages for the breach of a contract to replace borrowed stock is the highest price it had reached between the breach and the trial. In the present case the highest price was the ruling price at the time of the demand and refusal.

It is contended, however, by the beneficial plaintiff that there are other facts in the case which will preclude Loeffler from paying himself out of this fund. Briefly stated, these facts are, that defendant held Schmertz's bond for $100,000, as security for the same debts that are covered by the assignment of life insurance policies. The judgment on this bond was a first lien on Schmertz's real estate. Subsequent to that were two other judgments upon which executions were issued and the land sold. Before the auditor charged with distribution of the fund thus raised, no claim was made by Loeffler, and no part of the fund was awarded to his judgment; and it is contended that he thereby forfeited his right to payment out of the insurance fund. On that question the learned trial judge rightly refused to sustain the use plaintiff's contention, and his ruling is not specifically assigned as error. But if it were, it is sufficiently vindicated in the opinion of the court below. In addition to the authority there cited may be added Ayres v. Wattson, 57 Pa. 360, to the

effect that a creditor may hold an unlimited number of collaterals and avail himself of any of them as long as the debt remains unpaid. "A person may if he chooses relinquish a collateral security altogether, without the consent of other creditors of his debtor. It is a matter resting entirely between him and his debtor with which others have nothing to do:" Dyott's Est., 2 W. & S. 490.

It was further contended that as Loeffler had a prior hold on two funds he should have resorted to the other, leaving this one intact for the payment of general creditors. But the junior lien creditors might with propriety have urged the same considerations in relation to the realty fund. If the defendant had participated in that fund the junior lien creditors might have asked to be subrogated to his rights in the present fund : Ramsey's App., 2 Watts, 228 ; Mason's App., 89 Pa. 402 ; Tubbs's Est., 161 Pa. 252 ; Addams v. Heffernan, 9 Watts, 542.

Inasmuch as defendant's debt is not yet paid in full, it is not necessary to consider the allowance on account of the amount claimed to have been appropriated from the proceeds of the sale of personal property to the claim here in controversy. By the decree of court in those proceedings, it was ordered to be paid over on account of "defendant's judgment," and it has been here properly treated as so paid.

In any view that can be reasonably taken of the case, the result in the court below was substantially correct, and the decree should be sustained.

Decree affirmed and appeal dismissed at appellant's costs.