McCahan's Estate.

Taggart's Appeal.

516

Argued May 2, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Mercer B. Tate, Jr.,* with him *Thomas R. Wickersham,*
of *Wickersham & Wickersham* and *Montgomery & Mc-
Cracken,* for appellant.

*George Wanger,* wih him *Franklin C. Hutchinson,* for
appellee.

OPINION BY MR. JUSTICE KEPHART, June 30, 1933:
Mary C. McCahan, testatrix, died in 1905.  She be-
queathed certain shares of stock in trust, the income to

be paid to her niece, Anna G. Taggart, during her life; thereafter the corpus was to be paid to her issue, if any, and if there were no children or issue of deceased's children, the trust fund was to be paid to the life tenant's brothers and sisters. On March 2, 1932, Anna G. Taggart, the life tenant, died without children or issue of any deceased children. By her will she appointed appellant, E. Charles Taggart, executor. Surviving her were brothers, sisters and a nephew.

The life tenant had borrowed a considerable sum from the Norristown-Penn Trust Company, and assigned, as collateral security therefor, certain assets: the income from the trust, stock owned absolutely, and six insurance policies on her life, payable at death to her estate. After this transfer, or on September 5, 1930, life tenant assigned as collateral for loans to the Mogee sisters any equity she might have in the securities held by the trust company. A week later, September 12th, life tenant filed a voluntary petition in bankruptcy, was adjudged a bankrupt and on May 20, 1931, was discharged.

In the bankruptcy proceedings she listed as assets the stock owned absolutely, noting the assignment to the Mogees subject to the prior assignment to the trust company, and her life estate in the trust fund.

When the life tenant filed her petition and was adjudicated a bankrupt, she was indebted to the trust company on notes aggregating approximately $30,000. When she died on March 2, 1932, her indebtedness to the trust company amounted to $31,500. The insurance companies settled the policies at their face value, $31,000, and the trust company satisfied and discharged her indebtedness to it. Thereafter they had no lien on her life interest in the trust fund valued at $6,414.42. Both the trustee in bankruptcy and the executor of the life tenant claimed the value of the life estate. The orphans' court directed this sum to be paid to the trustee, and from its decree the present appeal is taken.

The auditing judge based his decision upon the merits of the case, but the orphans' court in banc, in affirming his decree, held that the orphans' court had no jurisdiction to consider the question of title to the funds representing the interest of the life tenant, reasoning that the federal courts had exclusive jurisdiction to decide such questions.

For nearly thirty years testatrix's estate had been subject to the continuing jurisdiction of the orphans' court for administration and distribution. The bankruptcy proceeding of the life tenant did not cut off this power nor remove all questions of distribution into the sphere of federal jurisdiction. Where the orphans' court has once acquired control over property, the jurisdiction of all other courts, though concurrent, is subject thereto. It may hear and determine all questions respecting title, possession and control of the litigated property: Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 734; Straton v. New, Trustee, 283 U. S. 318. See section 23 of the Bankruptcy Act of July 1, 1898, clause 541, 30 Stat. 552 (U. S. Ann. Code, Title 11, section 46). It was said by the United States Supreme Court in Bardes v. Hawarden Bank, 178 U. S. 524 at 537, that the present Bankruptcy Act clearly manifests the intention of congress "that controversies, not strictly or properly part of the proceedings in bankruptcy, but independent suits brought by the trustee in bankruptcy to assert a title to money or property as assets of the bankrupt against strangers to those proceedings, should not come within the jurisdiction of the District Courts of the United States . . . . . .

"One object in inserting this clause in the act may well have been to leave such controversies to be tried and determined, for the most part, in the local courts of the State, to the greater economy and convenience of litigants and witnesses. See Shoshone Mining Co. v. Rutter, 177 U. S. 505, 511, 513." See Lovell, Trustee, v. Newman & Son, 227 U. S. 412, where the Supreme Court con-

strued section 23 of the Bankruptcy Act. Also see Bush v. Elliott, 202 U. S. 477; 1 Loveland on Bankruptcy, 4th edition, section 74 et seq.; 1 Remington on Bankruptcy, section 1686.

Justice DAY, in Bush v. Elliott, supra, used the following pertinent language: "......the evident purpose of congress [was] to limit the jurisdiction of the United States Courts in respect to controversies which did not come simply within the jurisdiction of the federal courts as bankruptcy courts, and to preserve, to a greater extent than the former act, the jurisdiction of the state courts over actions which were not distinctly matters and proceedings in bankruptcy."

The rule of the federal courts as to this question may be summarized as follows: The jurisdiction conferred upon the federal courts for the benefit of an assignee in bankruptcy is concurrent with and does not divest that of the state courts in suits of which the latter had full cognizance. Where a state court has, in a proper case, taken jurisdiction of the subject-matter there involved prior to the filing of the petition in bankruptcy, it has complete and effective power to determine finally all rights and title in and to such property. A trustee acting for a federal court in bankruptcy can subject the questions involved to a federal court only if he meets the constitutional requirements as to federal jurisdiction: diversity of citizenship where the amount involved is in excess of $3,000; a federal question under the Constitution or laws of the United States; otherwise he is remitted to the state courts: Doyle v. Duncan Spangler Coal Co., 288 Fed. 897; Kaigler v. Gibson, 264 Fed. 240; In re Vadner, 259 Fed. 614; Tripplehorn v. Cambron, 250 Fed. 605; In re Schmidt, 224 Fed. 814. In fact, it is the duty of a state court once it has acquired jurisdiction prior to the commencement of proceedings in bankruptcy to proceed to final decree notwithstanding the adjudication in bankruptcy: Pickens v. Roy, 187 U. S. 177;

Speakman v. Bryan, 53 Fed. (2d) 463; writ of certiorari denied, 285 U. S. 539.

Our own decisions substantiate this conclusion. Recently in the case of Dalton & Dalton v. Supplee, 310 Pa. 474, we said: "The general rule of law that the court first obtaining jurisdiction over the res retains it to the end, prevails in the law of bankruptcy...... A state court distributing a fund in its hands raised by it on its process, or in the possession of the res, is entitled to retain jurisdiction for the purpose of enforcing a lien, even though bankruptcy intervenes." See Breckons v. Snyder, 211 Pa. 176. See also Dundas's App., Lippincott's App., 73 Pa. 474; McGettrick's App., 98 Pa. 9; King's Est., 215 Pa. 59.

Mr. Justice ROBERTS aptly concludes the question in Isaacs, Trustee, v. Hobbs Tie & Timber Co., supra, at page 737: "This is but an application of the well recognized rule that when a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession; and that the court originally acquiring jurisdiction is competent to hear and determine all questions respecting title, possession and control of the property."

The life tenant was indebted to the trust company when she was adjudicated a voluntary bankrupt, September 12, 1930, in the sum of $30,000, to secure which the trust company held, as collateral, insurance policies having a cash surrender value of $8,500, stock valued at $1,000, and an assignment of a life interest in a trust fund of a value of $6,500, or a total of $16,000. Consequently, when the life tenant was adjudged a bankrupt there was no equity in that collateral which could be enjoyed either by her or by her trustee who succeeded to her rights.

Within eighteen months of the adjudication in bankruptcy and after her discharge, the life tenant died; the

policies of life insurance attained their face value of $31,000, and from this fund the trust company satisfied its claim against the life tenant, freeing the other collateral items.

In the court below the executor of the life tenant claimed the trustee was not entitled to this collateral, on the theory that the title of a trustee is determined when the adjudication in bankruptcy occurs and, there being no equity in the collateral which the trustee could then acquire, the mere accident of death, by increasing the value of the insurance collateral, could not, under federal law, enlarge the rights of the trustee by permitting it to appropriate this property; his title vested as of the date of bankruptcy and could not arise subsequently to that adjudication. The executor claimed the freed collateral on the theory that since the trust company had paid itself in full out of the proceeds of the insurance policies which had been pledged with it, it had done so with the beneficiaries' money to his prejudice, and that the executor of the life tenant's estate was subrogated to the rights of the trust company, as pledgee, in the collateral which should have been subjected to this payment.

The trustee in bankruptcy urges that the bank had a claim secured by three separate collateral items, one of which it subjected to the payment of its full claim, and thereby released its lien on the other two items, with the result that the trustee in bankruptcy may now subject these other items to the claims of the creditors it represents. Its theory is that title to the bankrupt's property vested in the trustee upon the adjudication, subject only to the lien of the pledge which remained undisturbed and effective against both bankrupt and creditors: In re Sherwoods, 210 Fed. 754; In re Wade, 185 Fed. 664; Collier on Bankruptcy, page 1660.

It further argues that a creditor holding several separate items as security for his claim may look for satisfaction to any one of the several securities: Ayres v.

Wattson, 57 Pa. 360; Integrity Title Ins. Co. v. Rau, 153 Pa. 488. Once the creditor has paid its claim, regardless of the security which it realized upon for the purpose, its lien on the remaining property pledged dissolves, and such property can be recovered by the trustee: In re McIntyre, 189 Fed. 46; English v. Ross, 140 Fed. 630.

The trustee points out that the bank in the instant case was not limited to the cash surrender value, but was entitled to the proceeds of the policies up to the amount necessary to pay the indebtedness (In re Davidson, 179 Fed. 750; Van Kirk v. Vermont Slate Co., 140 Fed. 38) and concludes that, this being so, its contention must prevail that the bank, having satisfied its claim, the remaining collateral in its possession was discharged from the lien and became available to the trustee in bankruptcy.

While this latter argument is persuasive, will it hold when careful consideration is given to the nature both of the collateral here involved and of the interest which a trustee in bankruptcy acquires in the insurance policies of a bankrupt?

It is a fundamental conception of the law of bankruptcy that a trustee in bankruptcy takes title to all property of a bankrupt as of the date of the adjudication, with the exception of exempt property. See section 70 (a) of the Bankruptcy Act of July 1, 1898, clause 541, 30 Stat. 565 (U. S. Code Ann., Title 11, section 110). This section definitely determines a trustee's rights in insurance policies. It reads: "When any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise, the

policy shall pass to the trustee as assets." The federal courts have held that this provision intended to give to the trustee *only the cash surrender value,* with the result that if there *is no cash surrender value* on the date of adjudication, the trustee obtains nothing even though shortly after the adjudication the policies may attain their face value: Burlingham v. Crouse, 228 U. S. 459; Everett v. Judson, 228 U. S. 474; Andrews v. Partridge, 228 U. S. 479; Holden v. Stratton, 198 U. S. 202. The important date in determining the property which passes to the trustee is the day of the adjudication. In White, Trustee, v. Stump, 266 U. S. 310, 313, the court said: "Thus we have said that the law discloses a purpose 'to fix the line of cleavage' with special regard to the conditions existing when the petition is filed,......and that —'It is then that the bankruptcy proceeding is initiated, that the hands of the bankrupt and of his creditors are stayed and that his estate passes actually or potentially into the control of the bankruptcy court.' "

On that date the property of the life tenant held by the bank as security for its claim, was approximately $14,000 less than the claim it secured. In other words, on that day this property, including the cash surrender value of the policies of insurance, yielded no equity available for the trustee in bankruptcy. It has been established in a long line of cases beginning with Burlingham v. Crouse, supra, that where a life insurance policy has no cash surrender value, nothing passes to the trustee. In that case the loan and cash surrender value were the same, insured died and the Supreme Court held no title to the insurance passed to the trustee.* It must follow a trus-

---

* Holden v. Stratton, 198 U. S. 202; Hiscock, Trustee, v. Mertens, 205 U. S. 202; Everett v. Judson, 228 U. S. 474; Frederick, Trustee, v. Fid. Mut. L. Ins. Co., 256 U. S. 395; Gould v. N. Y. L. Ins. Co., 132 Fed. 927. In this last case the policy had no value since no premiums had been paid, only a note of the insured having been given. The court said at page 931: "......there was nothing to pass to the trustee except the right to speculate on the bankrupt's

tee is entitled to cash surrender value only if the policy in fact has one or that which is free from liens less than that value.

Granting for a moment the trustee had title subject to the lien, unless the property should increase in value its title was valueless. Is it possible then to reason that the bankrupt's death, causing the face value of the insurance policies to become due, actually increased the value of the property and created an equity which the trustee can claim? This does not accord either with the letter, the spirit, or the judicial interpretation of the law as to this increment in value of life insurance policies resulting from death. The difference between cash surrender value and face value of policies is not to be considered an increase in value in the same sense that the difference in market value of stock on different days is an increase in value; rather it is after-acquired property. True, the difference represents the proceeds of a contract between the bankrupt and the insurance company, but it is property specifically exempted from the hand of the trustee by section 70 of the Bankruptcy Act, supra.

Here the bankrupt was discharged. If a relative or friend had advanced to her the funds necessary to lift the debt and had taken the property over or given it to the bankrupt, would such act inure to the benefit of creditors whose rights were fixed on the day of adjudication? The accident of death does not raise a fund for creditors from a contract which the policy of the law has announced shall inure to the benefit of beneficiaries rather than creditors. Property may not be reached by indirection that cannot be reached directly. While it is undoubted the trustee may claim any increase in market value of stocks held as collateral for indebtedness, here no such increase existed. The purpose of this provision

---

life for a short time; and neither the Bankruptcy Act nor any other statute authorizes this." In re Simmons v. Griffin, 255 Fed. 521; Mercer Nat. Bank of Harrodsburg v. White's Exr., 236 Ky. 128, 133, 32 S. W. (2d) 734.

as to insurance in the Bankruptcy Act was to enable bankrupts, after bankruptcy, to retain their insurance after payment to the trustee of the cash surrender value, since, in many instances, because of age or debility, the procurement of new insurance would be impossible.*

When the bank chose to pay itself the full amount of the bankrupt's indebtedness to it from the proceeds of the insurance policies, it was, in substance, and as far as the trustee in bankruptcy is concerned, paying itself with property of the bankrupt acquired after the adjudication of bankruptcy, thus releasing other property which it held as collateral. The mere chance that it so adopted this method of satisfying its claim does not cause the beneficiaries to lose the whole benefit of the insurance proceeds. Though the executor could not compel the bank to subject the life estate and the stock to part payment, thereby releasing a portion of the proceeds of the insurance policies,† it does not necessarily follow that because the executor may not compel such action, he is thereby deprived of any remedy in such a situation. The relations between junior claimants established by law cannot be injuriously affected by adverse action by the pledgee. If a remedy is necessary, the executor may be subrogated to the rights of the bank, his decedent's creditor, in the property discharged from the lien by reason of the payment from her (the decedent's) own property acquired subsequently to her adjudication in bankruptcy. In Barbin v. Moore, 159 Atl. 409 (N. H., 1932),

---

* Mercer Nat. Bank of Harrodsburg v. White's Exr., 236 Ky. 128, 133, 32 S. W. (2d) 734: "Policies of insurance without cash value, and those pledged to the full extent of the insured's equity, are treated precisely as exempt property is treated, and the bankrupt is left free to deal with it as he may desire. A trustee in bankruptcy has no interest in a policy of life insurance payable upon the death of the insured to his personal representative, when the insured has previously pledged the policy for a sum equal to or greater than the stipulated surrender value."

† Hampton v. Congress B. & L. Assn., 300 Pa. 501; Jennings v. Loeffler, 184 Pa. 318; Ayres v. Wattson, 57 Pa. 360.

insurance policies were pledged with the bank as collateral for a loan that was also secured by a mortgage. The insured died and the bank paid the loan from the insurance and satisfied the mortgage. The mortgaged property was then sold and the beneficiaries claimed the sum from the estate that they were entitled to, as though the pledgee had collected on the mortgage collateral. The court held they were entitled to that money even though creditors went unpaid. See Burlingham v. Crouse, supra.

Where a claimant has liens upon two funds, with separate junior claimants for both funds, the balance remaining after the satisfaction of the senior claimant will be distributed in accordance with equitable principles, regardless of the fund which the senior claimant may have seized to satisfy his claim. In equity the situation is, in substance, as though the bank had sold all the collateral subject to its lien and applied the proceeds of such property, together with sufficient from the proceeds of the life insurance policies, to the payment of its claim, and now held the balance of the proceeds of the life insurance policies. To deny the executor his right to this fund is, in effect, to permit the trustee in bankruptcy to reach property of the bankrupt acquired after the adjudication of bankruptcy, as well as to deprive the bankrupt or his representatives of the benefits under section 70 of the Bankruptcy Act, supra, as to insurance.

The cases which appellee cites as sustaining its contention that appellant is not subrogated to the rights of the bank, the pledgee, do not so hold. It should be noted that both of them, Hampton v. Congress B. & L. Assn., 300 Pa. 501, and Jennings v. Loeffler, 184 Pa. 318, are controversies between the debtor and the secured creditor, not between the debtor and one claiming the fund released from the lien. This is expressly recognized in Hampton v. Congress B. & L. Assn., supra, at pages 506-507: "......it may be, though it is not necessary to decide, the latter could be subrogated to such rights as he

possessed...... But this is not the question before us for consideration. Here we have a principal debtor whose obligation is secured by two separate deposits of collateral,...... The creditor could elect to proceed against one and release the other, and this course was pursued by the association...... He [the debtor] cannot now complain when the proceeds of his collateral were appropriated to the payment of the association's debt, whatever his rights over against the realty company may be, for these have not been disturbed, if any exist." The rights as between the owners of the collateral, once it had been released from the lien, were not considered in either of the cases.

Where a creditor has a lien on funds belonging to different persons and his claim should rightly be paid from the funds of one, but he satisfies it from funds of the other, the latter may be subrogated to his rights in the fund untouched: Lloyd v. Galbraith, 32 Pa. 103; Gearhart v. Jordan, 11 Pa. 325.

Subrogation is an equitable doctrine and is applicable whenever a debt or obligation is paid from the funds of one person although properly payable from the funds of another. The purpose of the Bankruptcy Law is to wipe clean the slate of misfortune and debt and to permit the bankrupt to start afresh. It would be strikingly inequitable to deny the advantages thereof by indirection as we are urged here to do. Furthermore, we cannot disregard the rights of creditors arising since the adjudication in bankruptcy.

Judgment reversed, case remanded with directions to pay over $6,414.42, being the fund in question, to E. Charles Taggart, executor of the estate of Anna G. Taggart, deceased.