## Baily *versus* Brownfield.

1. The entry of satisfaction on a judgment collected by execution from a surety, such entry not being made at the instance of the surety, is no ground for refusing subrogation to the security of the creditor.

2. In Pennsylvania, a surety, who has paid a debt secured by judgment against the principal, and who is in other respects entitled to substitution, may revive the judgment without first obtaining a decree of substitution, and may have his right tried on the *scire facias.*

3. Where partners borrow money to be used in their business, it becomes a partnership fund, and no matter what positions they occupy on the security given to the lender, they are accountable to one another as partners. The receipt of the money by one of them only, does not alter the case.

4. The subsequent loan of part of the money by the partner who received it, or its misapplication by him, will not make him a surety as to the debt, if he was not so before.

5. A partner, by paying a partnership debt, is not thereby entitled to subrogation as against his copartner.

6. Even though a debt paid by a copartner, and for which both are bound, be not a debt of the firm, the partner paying it should not be allowed substitution without first accounting for the profits of the partnership business received by him; and his remedy is by action of account render, or a bill in equity for an account.

ERROR to the Common Pleas of *Fayette county.*

This was a *scire facias* on a judgment obtained by The Monongahela Bank of Brownsville *v.* William Baily. It was issued for the use of Basil Brownfield, against Baily, the defendant. The suit in which the judgment was obtained was brought to June term, 1841, on a promissory note for $1500. April 5, 1841, judgment was entered for $1580.63.

William Baily and Basil Brownfield, in the fall of 1839, entered into a partnership for the purpose of buying, driving, killing, and salting hogs, and conveying the pork to Baltimore, and there selling it.    The sum of $1500 was borrowed out of the Monongahela Bank of Brownsville, on a note of which William Baily was the drawer, and Basil Brownfield and *Isaac Nixon* were the endorsers. About $850 of this sum was laid out by them in the purchase of hogs in the state of Ohio, and in driving them to Basil Brownfield's, in Fayette county, Pa., where they were kept for a while, and then killed and salted, the bacon subsequently taken to Baltimore and. sold, and the whole proceeds received by Brownfield. The remaining $600 was lent to Isaac Nixon, the other endorser. The note in the bank not being paid, suits were brought against Baily as drawer, and Brownfield as endorser, and judgments obtained for the same.    Subsequently Brownfield's real estate was sold on other judgments, and out of part of the proceeds of the sale the judgment of the bank was paid.    This *scire facias* was issued at the instance of Brownfield, on the judgment of the bank against Baily, to recover a balance alleged to be due him on this partnership transaction.    The judgment of the bank against Baily had been marked on the docket, by the attorney of the bank, as paid, and no subrogation or assignment of the judgment to Brownfield had been directed or made, and no account was ever settled between Baily and Brownfield of the partnership transaction.

The material question in the case was whether Brownfield could sustain the *scire facias* against Baily, and whether this was a proper mode of settling the partnership account between Baily and Brownfield.    Isaac Nixon had failed.

On the part of the defendant it was testified by William Nixon that the money was borrowed by Baily and Brownfield, they being partners, for the purchase of hogs; that about $850 was laid out in the purchase of hogs and driving them, and about $650 lent to *Isaac* Nixon, one of the endorsers, with the understanding that that amount should be applied to the payment of the note.    He further stated that Brownfield said to him, after he had sold the pork, that he had done better than he expected; that he had saved himself, and got paid for his corn fed to the hogs, and that Baily was then out of the difficulty.

There were given in evidence, receipts, as follows:—

August 28, 1841.    Received of Isaac Nixon, one hundred and fifty dollars, which I am to return, or settle with the Bank.
    $150.                                        BASIL BROWNFIELD.

Uniontown, 7th Sept. 1841.    Received of Isaac Nixon, two hundred and thirteen dollars, which I am to pay back, when called for.                                        BASIL BROWNFIELD.

[Baily *v*. Brownfield.]

The defendant's counsel rested.

On the part of the plaintiff it was also testified, that Baily told Brownfield that he had let Isaac Nixon have $950 of the money; that he (Nixon) was to pay it back to him in time for him to pay it to the bank.

In answer to the first point on part of defendant, the Court charged, " If the relation of principal and surety existed between Brownfield and Baily, and Brownfield was the surety, and the judgment was paid by the sale of Brownfield's land, the *scire facias* could issue at the instance of Brownfield, without the vacation of the entry of satisfaction, or without any order of the Court. The judgment was destroyed at law, but not in equity. The right of substitution is everything; the actual substitution nothing. If a *fi. fa.* had been issued at the instance of Brownfield, the Court, on application, would have set it aside; but, on the *scire facias*, the same evidence may be heard which would have been proper on a rule to show cause why Brownfield should not be substituted to the rights of the Bank in the judgment. The payment of the judgment having been involuntary, no inference was to be drawn from it; *the satisfaction* was intended to extinguish his equity in the same."

In answer to the second point, the Court, *inter alia*, charged, " If the jury believe the money was drawn from the bank by Baily & Brownfield, *as partners*, and used *as such in whole, the plaintiff cannot recover. But if even it was so drawn, intending to invest the whole proceeds of the note in a partnership venture, and the parties afterwards employed only a part of the amount, they* would be partners in respect only to the amount employed. And if Baily, as drawer, retained the balance of the money, the relation of principal and surety would exist between them as to the amount retained, and the plaintiff would be entitled to recover on the judgment the amount so retained by Baily, *notwithstanding the partnership account had not been settled.*"

In reply to the defendant's *fourth* point, the judge referred it to the jury to say whether Brownfield intended to convey the idea that Baily was out of the difficulty *as to the whole amount* borrowed from the bank, or only the part invested in the hogs. In answer to the fifth point, he charged that if Brownfield claimed *to* be part owner of the money which was invested in the hogs, and afterwards agreed to make the loan to Nixon, and considered Nixon to be the creditor of himself as well as of Baily, then the two must bear the loss; but the mere mention to Brownfield by Baily of the loan to Nixon, would not involve Brownfield in the risk or loss of the loan.

Verdict was rendered for Brownfield for $449.

Error was assigned to the answers to points.

*Veech, Howell,* and *Kaine,* for plaintiff in error.—The judgment was *satisfied* by the attorney of the bank, and was beyond the control of the Court: 10 *Ser. & R.* 391, Phillips *v.* Israel.

The money was lent to Nixon *before* the bacon was sold, and of course before any account could have been settled by the partners. It was contended that they were to be considered as partners with respect *to the whole of the money.*

There has been no settlement of the partnership account. Assumpsit will not lie by one partner, to recover from the other a balance due upon the settlement of their partnership accounts, *without proof of an express promise to pay:* 4 *W. & Ser.* 14, Kellam *v.* Preston.

If an action of assumpsit will not lie between partners, until the partnership account is settled, the plaintiff cannot maintain *this action,* as it amounts to the same thing.

The Court erred in not charging the jury, as requested by the defendant, in the fourth and fifth points.

*Deford,* for defendant in error.—It was admitted that the parties entered into partnership to purchase hogs, but it was alleged that the money borrowed from the bank was to raise Baily's part of the funds for the purpose. As Baily, the plaintiff in error, alleged that the money was drawn out of the bank *in partnership,* it was for him to show it. It was a fact for the jury, and they have decided it.

The satisfaction entered on the record by the attorney of the bank is not material. If justice requires it, the judgment will, in equity, be considered as unsatisfied: 10 *Ser. & R.* 399; 2 *Rawle* 131; 5 *Watts* 231; 6 *Id.* 274.

In regard to the receipts of Brownfield to Nixon, they prove on their face that the money was Baily's separate funds, as he promises to "return or settle with the bank," or "pay back when called for."

The opinion of the Court was delivered by

BLACK, C. J.—The entry of satisfaction on a judgment collected by execution from a surety, such entry not being made at the instance of the surety, is no ground for refusing subrogation. Whether the fact of payment does or does not appear on the record, it cannot be allowed to have any influence on the rights of the parties, except what equity gives it.

It is also true that in this state a surety who has paid a debt secured by judgment against the principal, and who is in other respects entitled to be substituted to the rights of the creditor, may revive the judgment without first having a decree of subrogation, and try his right as it was tried here on the *scire facias.* This results from our system of mingling equity and law together,

[Baily *v.* Brownfield.]

and is not more anomalous than permitting a vendee by articles of agreement to recover in ejectment.

The more serious difficulty which the equitable plaintiff in the Court below had to encounter, was in showing that he was a surety at all. The judgment was obtained by the Bank of Brownsville on a note made by Baily, and endorsed by Brownfield and one Isaac Nixon, and discounted by the bank. Baily and Brownfield were partners, and the money was obtained for the purposes of their business. The proceeds of the note were paid to Baily, who soon after gave to Brownfield eight hundred and fifty dollars to buy stock; and the remaining six hundred and fifty dollars was lent to Nixon on the understanding that he should pay that amount to the bank on the note. This he never did, but he paid Brownfield three hundred and sixty-three dollars of it. I do not say that these facts were either proven or admitted; but there was some evidence tending to establish them, and for the purpose of reviewing the judgment we must assume them here to be true.

Where partners borrow money to be used in the business which they are jointly carrying on, it becomes a partnership fund; and no matter how they stand on the security given to the lender, they are accountable to one another as partners. The relation of principal and surety can have no place between them. It does not alter this case that Baily received the proceeds of the note; for property or stock or money which belongs to a firm is as rightly in the hands of one member as another. The possession of one is, in law, the possession of both. The subsequent loan of a part of it to a third person does not change their relations. Even the misapplication of a partnership fund by one of the partners, cannot make the other a surety, if he was not so before; much less an arrangement in good faith by which a joint debt was to be partly paid, and least of all, a loan of the fund with the mutual consent of both partners, as there is much reason to believe this was. Look at this case how we will, the judgment paid by Brownfield was a partnership debt, and for the payment he was entitled to a credit in the partnership accounts.

This was an appeal, though in the form of a legal proceeding, to the equitable jurisdiction of the Court. It must be considered as a bill in Chancery for subrogation. Such a bill is entitled to no countenance when the decree it prays for would do a substantial wrong. Now suppose every other difficulty out of the way; suppose, what is not the law, that a partner, after paying a partnership debt, may be substituted to the rights of the creditor as against his copartner; or suppose, what is not fact, that this was not a debt of the firm; still, injustice may be done by allowing the plaintiff to be subrogated without first accounting to the defendant for the profits of the business in which they were jointly engaged. All of the money borrowed from the bank was traced

[Baily *v.* Brownfield.]

into the plantiff's hands, except two hundred and sixty-three dollars. What other sums the defendant may have advanced, or what his share of the profits was, can only be ascertained upon a full settlement of the accounts; and if, on such settlement, he should be indebted to the defendant more than the balance he claims here, his present action ought to fail for that reason, if for no other. If there is anything due to him, account render, where each party can be put on his oath, is the only remedy at law, and to that action, or to a bill in equity for an account, he ought to be remitted.

Judgment reversed, and *venire facias de novo* awarded.