Stalwart B. & L. Ass'n. *v.* Borbeck et al.
(Stenton B. & L. Ass'n., Appellant).

396

Argued October 15, 1936. 

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*D. P. Hibberd,* with him *S. Wilson Vaughn* and *Heilner H. Gaul,* for appellant.

*A. J. Nydick,* with him *M. Jacob Markmann,* for appellee.

OPINION BY CUNNINGHAM, J., April 15, 1937:

This appeal arises out of an attachment execution issued by Stalwart Building and Loan Association, (herein referred to as Stalwart), upon seven shares of stock issued by Stenton Building and Loan Association, garnishee below and appellant herein, (referred to as Stenton) to Archibald and Anna F. Borbeck, execution defendants, and held by it as collateral security upon its mortgage loan to them. No facts are in dispute; they were placed upon the record at the trial by stipulations of counsel and may be thus summarized: On April 25, 1923, the Borbecks executed their bond and mortgage in the principal sum of $1,300 upon their premises, at No. 3426 Tampa Street, Philadelphia, to the garnishee association, which by consolidation later became Triune Building and Loan Association. In connection with this mortgage the Borbecks executed the following assignment to the association—"In consideration of a loan of Thirteen Hundred Dollars and as collateral security therefor, we hereby transfer and set over to Stenton Building and Loan Association 7 shares [37th] series of the stock of the said association, now standing in our name, and we do hereby declare and agree that it shall and may be lawful for the said association at its option and without notice to us, to appropriate all payments, dues and profits made upon said stock to and for payment on account of the said loan and the interest, premiums and fines thereon."

On July 11, 1930, the Borbecks conveyed the premises, subject to Stenton's mortgage, to one Annie Martin, but their stock in the association was not transferred

to her, nor did Stenton have knowledge of this convey-
ance. Subsequently, July 31, 1930, Stalwart, being the
owner of a certain collateral bond with warrant of at-
torney executed by the Borbecks, entered judgment
against them for an amount reduced by the date of
trial to $1,335.08. On December 18, 1930, Stalwart
issued an attachment execution upon this judgment
and summoned Stenton as garnishee. The writ was
served upon Stenton on December 20; interrogatories
were served and answered. The Borbeck's stock in
Stenton had not matured at this time; they continued
to pay upon it until it matured on September 29, 1931.
Thereupon Stenton appropriated the matured value of
the stock, amounting to $1,400, to the payment of its
mortgage loan of $1,300, and, on the same day and
without notice to Stalwart, satisfied of record its mort-
gage on the Tampa Street premises, which were worth
$1,400 and upwards. The Borbecks were not served.
Supplemental interrogatories were filed and answered
in 1932, and the case finally came to trial in 1936 upon
the garnishee's plea of nulla bona.

It was expressly stipulated that Stalwart, as the
attaching creditor, gave no notice at any time to Sten-
ton, as garnishee, of any alleged right or claim to be
subrogated to the rights of Stenton as mortgagee in the
Borbeck mortgage or as assignee of the attached stock.
It was further agreed at the trial, that if Stalwart was
entitled to recover under its claim to subrogation the
full value of the shares appropriated by Stenton, its
verdict should be in the amount of $1,686.82, ($1,400
with interest), but if it could recover only the bal-
ance remaining after payment of Stenton's loan, its
verdict should be $126.70—$100. with interest. The
trial judge directed a verdict for Stalwart for the full
amount of its claim. The court in banc refused to grant
a new trial or reduce the verdict and entered judgment
thereon. The garnishee association has appealed.

Stalwart's position, which was sustained by the court below, is that, although appellant may have been entitled to appropriate the stock to payment of its mortgage debt, it had no right to satisfy the mortgage without notice to Stalwart.

The issues arising under the pleadings and stipulations were thus accurately stated by the trial judge in his opinion written for the court in banc. "[Stalwart] contended that, as the garnishee held two concededly good securities for the debt of the defendants to it, one of which was subject to [Stalwart's] attachment, it was bound, before applying the doubly encumbered security to the satisfaction of the debt, to give [Stalwart] notice of its intention to do so, and, that by its failure to give such notice, it wrongfully deprived [Stalwart] of an opportunity to protect itself by claiming subrogation to the rights of the [garnishee] in the mortgage. ...... The garnishee assumed two positions at the argument of the rule: first, that, having the two securities for the debt, both of which were senior in lien to [Stalwart's] execution, it had a right to elect which security it would use to satisfy the claim, without regard to the rights of [Stalwart] under its attachment; and, second, that, even if [Stalwart] could have demanded either that the garnishee proceed first against the mortgaged premises, under the equitable doctrine of marshaling assets, or that it be subrogated to the rights of the [garnishee] in the mortgage, [Stalwart] was bound to assert its demands by giving notice thereof to the garnishee, before the latter was obligated to protect [Stalwart's] interest in the securities."

After stating that the doctrine of marshaling of assets is applied in equity only where the securities are equal in availability, the court below continued: "It may be conceded that this garnishee had two securities which were not altogether equal in availability, for it had in one of the securities the matured stock, which

was the equivalent of cash, and, in the other, a mortgage, the collection of which involved a law suit. In these circumstances [Stalwart] could not compel the garnishee to take the law suit in satisfaction of its debt in preference to the cash in hand; and, if that were the whole case, the garnishee's election would have been well within its rights. In doing so, however, the garnishee went further than the mere exercise of its right of election to take the cash rather than to proceed against the mortgage. It secretly satisfied the mortgage, in the face of its knowledge of [Stalwart's] interest in the stock, and thus, without benefiting itself, wrongfully destroyed [Stalwart's] right to subrogation in the mortgage, which was on a property now owned by a third person, who had bought subject thereto."

Granting that the service of Stalwart's attachment upon Stenton placed Stalwart in the position of a subsequent assignee of the stock, Stenton, by virtue of the prior assignment of the stock to it as security for the mortgage debt, together with the option given in the assignment to appropriate, had the right to apply the matured value of the stock, as against Stalwart's attachment, to the payment of the mortgage debt, although payments on the stock were made by the Borbecks for approximately a year after the attachment was served: *Hemperley v. Tyson et al.*, 170 Pa. 385, 32 A. 1081, a case hereinafter discussed.

Aside from the question of subrogation, Stalwart's attachment reached nothing but the $100. remaining after the debt due Stenton had been paid: *Erthal v. Glueck,* 10 Pa. Superior Ct. 402. See also *Bartram B. & L. Assn. v. Nolen et al.,* 300 Pa. 417, 150 A. 628; *Johnson v. Sharon Building Assn.,* 16 Pa. Superior Ct. 311, (in which it was also held that resort might be had either to the mortgaged real estate or to the stock); *Newhoff v. Rochester,* 66 Pa. Superior Ct. 297; *Morris Resnick B. & L. Assn. v. Barnes,* 108 Pa. Superior Ct.

218, 164 A. 358; *Early & Lane's Appeal,* 89 Pa. 411. The holding of these cases is in conformity with the well established rule that the lien of an attachment is inferior to the interest of a prior assignee of the judgment debtor: *Hemphill v. Yerkes,* 132 Pa. 545, 19 A. 342; *Austin-Nichols & Co., Inc., v. Union Trust Co., of Pittsburgh,* 289 Pa. 341, 137 A. 461; *Phillip's Estate* (No. 4,) 205 Pa. 525, 55 A. 216; *LaBarre v. Doney,* 53 Pa. Superior Ct. 435; *South Hills Trust Co. v. Baker et al.,* 83 Pa. Superior Ct. 243.

The cases dealing with attachment of shares of stock in the hands of a building and loan association which announce the rule that no appropriation can be made subsequent to the attachment are distinguishable. Thus, in *Sullivan & Sons Mfg. Co. et al., v. Ideal B. & L. Assn.,* 313 Pa. 407, 411, 170 A. 263, 98 A. L. R. 1, the court pointed out that after an attachment of the stock the debtor-stockholder cannot demand that it be appropriated to the payment of the mortgage loan and that the attaching creditor's rights were subject only to those of the association by virtue of the prior assignment of the stock to it. See the elaborate annotation to this case in 98 A. L. R. 6, ff. dealing, inter alia, with the right of the debtor or his assignees to require appropriation. *Egolf B. & L. Assn. v. Cleaver,* 228 Pa. 60, 77 A. 245, is a similar case as regards the debtor's right to appropriate after the attachment. Where the association sells the mortgaged premises at sheriff's sale on its mortgage and realizes the full amount of the mortgage loan from the sale, it cannot thereafter appropriate the value of the stock for the benefit of a second mortgagee, and an attachment binds the stock in the hands of the garnishee: *Hamilton Trust Co v. Hoskins,* 244 Pa. 1, 90 A. 541. Where the association elects to satisfy the mortgage debt from the sale of the mortgaged premises, it loses the right to appropriate the stock, and a subsequent assignee is entitled to the

stock: *Bier v. Keer,* 70 Pa. Superior Ct. 570. It is also clear that the assignment to the association of the stock as collateral gave the association a lien on future payments on the stock paramount to the lien acquired by the attachment. The association, therefore, had a right to appropriate payments made on the stock after the attachment was served: *Duffy v. 58th & Chester Ave., B. & L. Assn. et al.,* 325 Pa. 127, 189 A. 307, where the Supreme Court, affirming this court (122 Pa. Superior Ct. 113, 184 A. 549), held that the garnishee could set off property of the debtor coming into its hands after service of the writ, where the obligation of the debtor to the garnishee contained a provision giving the latter a lien upon all property of the former "at any time" in the hands of the garnishee.

It is equally well settled, as stated by the court below, that the garnishee, having two securities for the mortgage loan due it—the real estate and the stock—could proceed against either at its election: *Jennings v. Loeffler,* 184 Pa. 318, 39 A. 214; *Order of Solon v. Gunther,* 8 Pa. Superior Ct. 319. In *Davis's Estate,* 47 Pa. Superior Ct. 240, this court said (p. 247), "Generally, an encumbrancer who enjoys the security of two estates or funds, possesses both the legal and equitable right to resort to either for payment . . . . . ." See also, to the same effect, *Landberg et al. v. Equitable Investment Co. et al.,* 292 Pa. 476, 481, 141 A. 302; *Hampton v. Congress B. & L. Assn.,* 300 Pa. 501, 505, 150 A. 895.

In reaching its conclusion that Stenton was liable in this proceeding to Stalwart for the full amount of the latter's judgment against the Borbecks because Stenton, after having collected its debt out of the stock it held as collateral and after notice of Stalwart's claim against the Borbecks through the service of the attachment, satisfied its mortgage and thereby deprived Stalwart of its claim to be subrogated to the rights of Stenton under the mortgage, the court below relied

largely upon *Selikowitz v. Merchants B. & L. Assn.,* 103 Pa. Superior Ct. 453, 157 A. 337.

It may be noted in passing that there are several distinctions between that case and the one now at bar. The sale which fixed the rights of the parties in the case cited was a sheriff's sale and no appropriation of the stock had been made before settlement thereunder. Moreover, that was an action in assumpsit by a second assignee of the stock.

In the view we take of the present case it is not essential, under the facts appearing upon this record, to pass at this time upon the merits of Stalwart's claim for subrogation. Even if the payments by the Borbecks upon the stock were not, ipso facto, payments upon the mortgage (*Economy Building Assn. v. Hungerbuehler,* 93 Pa. 258,) and even if the satisfaction by Stenton of its mortgage after it had elected to appropriate the collateral security held by it to the payment of its debt entitled Stalwart to subrogation, upon which matters we express no opinion at this time, we think such right cannot be enforced in this case for two reasons: first, because, as expressly stipulated by the parties, Stalwart "gave no notice to Stenton," as garnishee, of Stalwart's "alleged right of subrogation to the rights of [Stenton] as mortgagee of the Borbecks;" and, secondly, because subrogation may not be enforced by means of attachment proceedings.

As we read the case of *Hemperley v. Tyson et al.,* supra, Stalwart's failure to give notice of its intention to enforce its claim to subrogation prevents its recovery in this proceeding. The case cited was attachment execution and the material facts were: Anna Tyson borrowed $1,400 from the Serial Building and Loan Association in January, 1883, and to secure the payment thereof gave to the association a mortgage on her real estate and an assignment of seven shares of its stock. Hemperley, the plaintiff in the attachment

proceedings, recovered a judgment against her in November, 1887, for $457., and nine days thereafter issued an attachment execution upon it under which he attached the assigned stock and summoned the association as garnishee. His judgment was a lien on the real estate covered by the mortgage, and by virtue of other process issued thereon he sold the former, subject to the latter. He acquired nothing by his sale, because the proceeds were insufficient to satisfy prior judgment liens. In 1892 the stock matured and the association, in compliance with the direction contained in the assignment of it, appropriated the amount realized from it in satisfaction of the mortgage debt. There, as here, the association entered the plea of nulla bona in the attachment proceedings and the trial was had on the issue so made. The trial court directed a verdict for the association and the Supreme Court affirmed the judgment entered thereon. The only difference between the assignment of the stock in that case and the assignment now before us is that in the case cited the assignment directed that the stock be appropriated toward the payment of any indebtedness to the association, whereas in the present case the association had an option to so appropriate. We think the difference is immaterial. Hemperley contended, inter alia, that by his attachment he acquired a lien on the stock, which ipso facto cast on the association the duty of exhausting the security furnished by the mortgage, before resorting to that afforded by the assignment. It was pointed out in the opinion that the action of the association in appropriating the stock was in strict accordance with the mutual purpose and understanding of the parties to the loan transaction, and in accordance with the by-laws of the association. It was then stated, citing *Early and Lane's Appeal,* supra, that the rights of the attaching creditor were subject to the paramount right of the

association to appropriate the stock payments. One of the contentions made by counsel for Hemperley was that the assets of Anna Tyson should have been so marshaled that both the association and Hemperley could have worked out their rights. In reply to this contention the writer of the opinion for the Supreme Court said: "Whether the latter [Hemperley] had an equity arising from his lien which would have entitled him to subrogation to the rights of the mortgagee if he had taken timely and proper measures to enforce it, is a question we need not consider, because there is nothing on the record which raises it. If he had such an equity, and it was his intention to enforce it, his plain duty was to notify the association of both, and to caution it 'to do no act by which his security might be diminished:' *Taylor's Exrs. v. Maris,* 5 Rawle, 51, and *McIlvain v. Mutual Assurance Co.,* 93 Pa. 30. Neither the lien of his judgment nor the lien of his attachment was such notice, or dispensed with it. As the appellant gave no notice or hint to the association of his purpose to compel it to resort in the first instance to the real estate for payment of its claim, or in the event of its refusal to do so, to demand subrogation to its rights as mortgagee, he cannot justly complain of the payment of the loan from the amount realized on the stock, or of the cancellation of the mortgage. He had a lien on the real estate and a lien on the stock, but the lien upon the former was subject to the mortgage, and the lien upon the latter was subject to the assignment held by the association."

In its opinion in the present case the court below took the position that the statement above quoted from the opinion of the Supreme Court in the Hemperley case is "sheer obiter dicta" and therefore not binding. We prefer to have the Supreme Court pass upon that question and are of opinion that we should here follow the rule there announced, particularly in view

of the nature and form of the present proceeding, and because the entire plan of building and loan associations contemplates that the mortgage is paid and should, in the absence of notice to the contrary, be satisfied when the stock matures.

*Auto B. & L. Assn. v. Hall,* 117 Pa. Superior Ct. 104, 177 A. 581, is an illustration of the principle announced in the Hemperley case. In the Hall case the holder of the second assignment of the stock tendered the association the difference between its paid in value and the mortgage loan and took action in the form of an independent proceeding to compel the association to transfer the mortgage to her.

In the next place, we are of opinion that the ground upon which Stalwart was permitted to recover—the satisfaction by Stenton of the Borbeck mortgage without affording Stalwart an opportunity to enforce its alleged right of subrogation—is not cognizable in an attachment execution proceeding. As its name implies, it is an execution process. While it is also an original process and a summons in so far as the garnishee is concerned *(Aarons v. Public Service B. & L. Assn.,* 318 Pa. 113, 118, 178 A. 141,) it is not, in our opinion, such an independent proceeding as to include the basis of recovery here sought to be enforced.

Subrogation is an equitable remedy *(McCahan's Estate,* 312 Pa. 515, 168 A. 685,) and may be enforced by bill: *Hopkins Mfg. Co. v. Ketterer,* 237 Pa. 285, 85 A. 421—to compel the assignee of a mortgagee to assign the mortgage to a junior lienor upon payment of the amount due—and *Brown v. McCullough,* 60 Pa. Superior Ct. 98,—bill by one co-tenant who paid tax liens on realty for subrogation against other co-tenants. It may also be enforced by an auxiliary proceeding such as the petition and rule filed in the pending judgment in *Auto B. & L. Assn. v. Hall,* supra, or by an appropriate independent action as in *Selikowitz v. Merchants B.*

& L. Assn., supra. See also *Croft v. Moore,* 9 Watts 451; *Baily v. Brownfield,* 20 Pa. 41; *Reimel v. Northwestern Trust Co.,* 304 Pa. 121, 155 A. 106.

In *Corson v. McAfee,* 44 Pa. 288, McAfee had a judgment against Paxson, and Shelly had a judgment against McAfee. Corson and Andrews became bail for Paxson for stay of execution. Later, McAfee and Paxson agreed that the judgment be opened. Shelly issued an attachment execution, summoned Paxson as garnishee, and obtained judgment against him. Shelly then had the judgment of McAfee *v.* Paxson marked to his use and sued Corson and Andrews as bail for Paxson. The Supreme Court held that the attachment did not prevent the debtor and garnishee from opening, by agreement, the judgment which the debtor held against the garnishee, and that, as a result, Corson and Andrews, as sureties, were discharged and Shelly could not maintain his action against them. In the course of the opinion it was held: "His attachment is his suit to reach the debt alleged to be due to his debtor, and that is the only remedy to which the law entitles him. By that he gets a judgment against his debtor's debtor, and an execution according to his judgment, and it is only in equity that he can claim subrogation to any of the collateral means held by his debtor for securing the debt attached." See also *Wherry v. Wherry et al.,* 179 Pa. 84, 36 A. 165. There a similar situation existed and it was said: "If subrogation to the rights of his debtor in the judgment which the latter holds against the garnishee is necessary for his protection, he should apply to the court for it, . . . . . . . He cannot of his own volition mark the judgment for his use and issue process upon it."

Our conclusion is that Stalwart is entitled to recover in this proceeding only the surplus of $100. (with interest) remaining in Stenton's hands after appropriation of the matured value of the stock to payment in

full of the debt due it, and the judgment will be reduced accordingly.

Judgment modified by reducing the amount thereof from $1686.82 to $126.70 as of April 11, 1936, and as so modified it is affirmed.